Chase Berger, Esq. (24115617)
GHIDOTTI BERGER, LLP
600 E. John Carpenter Fwy., Ste. 175
Irving, TX 75062
Ph: (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

**Attorney for Movant,**
U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust, its successors and assigns

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 18-40413 |
| | § | |
| **Ricky M. Farris, Lillian Farris,** | § | |
| | § | |
| **DEBTORS,** | § | CHAPTER 13 |
| | § | |
| **U.S. Bank Trust National Association, as** | § | |
| **Trustee of the Igloo Series III Trust,** | § | |
| | § | |
| **MOVANT,** | § | |
| | § | |
| **Ricky M. Farris, Lillian Farris, and** | § | |
| **Carey D. Ebert, Trustee,** | § | |
| | § | |
| **RESPONDENTS.** | § | |
| | § | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(A) AS TO 1625 CROWN POINT DRIVE, LITTLE ELM, TEXAS 75034 AND WAIVER OF THE THIRTY DAY REQUIREMENT PURSUANT TO 11 U.S.C. § 362(e)

## <u>14-DAY NEGATIVE NOTICE – LBR 4001(a)</u>

**Your rights may be affected by the relief sought in this pleading.  You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case.  If you oppose the relief sought by this pleading, you <u>must</u> file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading <u>*WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE*</u> shown in the certificate of service unless the Court shortens or extends the time for filing such objection.  If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought.  If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice.  If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Motion for Relief From Automatic Stay

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust ("**Movant**"), who, is for its Motion for Relief from Automatic Stay, would show the Court the following:

1.      This Motion is brought pursuant to 11  U.S.C. § 362(d)  and in accordance with Rules 4001 and 9014 of the Bankruptcy Rules of Procedure.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and §105, §362, and §1301.  This is a core proceeding within the meaning of 28 U.S.C. 157(b)(2)(A), (G), and (O).

2.      On March 1, 2018, Debtors, **Ricky M. Farris and Lillian Farris** ("**Debtors**") filed a petition under Chapter 13 of the United States Bankruptcy Code, Petition No.: 18-40413 (the "**Instant Petition**").

3.      On May 27, 2004, Debtors (collectively hereinafter the "**Borrowers**"), executed and delivered to Bank of America, N.A., a Note, with an original principal balance of $135,800.00 (the "**Note**").  A true and correct copy of the Note is attached hereto as **Exhibit "A"** and supported by the Affidavit filed concurrently with this Motion and incorporated herein by reference for all purposes.

4.      Movant is the current owner of the Note and is in possession of the original Note.

5.      Concurrently therewith, and as security for the Note, the Borrowers executed and delivered to Bank of America, N.A., a Deed of Trust ("**Deed of Trust**"), dated May 27, 2004, and filed of record with the County Clerk of Denton County, Texas against the Property, and more specifically described as:

BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.

A true and correct copy of the Deed of Trust, and all necessary assignments are attached as **Exhibit "B"** and supported by the Affidavit in support of this Motion filed concurrently with this Motion and is incorporated herein by reference for all purposes.  The Borrowers are the owners of record for the Property.

6.    On or about March 01, 2018, the Debtors filed a petition for order of relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C.

7.    The filing of the petition for an order of relief under Chapter 13 has automatically stayed Movant, pursuant to 11 U.S.C. § 362, from proceeding to collect the debt.  Continuation of the Stay under § 362 will cause irreparable harm to Movant.

8.    Debtors are in default for failing to tender no less than three (3) post-petition monthly payments as follows:

| Payments Due: | Payment | | Total Default |
|---|---|---|---|
| 08/01/2020-09/01/2020 | 2 @ $1,785.40 | = | $3,570.80 |
| Attorney Fees & Costs | | = | $1,231.00 |
| Suspense Balance | | = | $(905.79) |
| **TOTAL** | | **=** | **$3,896.01** |

9.    An additional payment will come due on October 1, 2020, in the amount of $1,785.40.  A true and correct copy of a payment history is attached as **Exhibit "C"** to the Affidavit and is incorporated herein by reference for all purposes.

Motion for Relief From Automatic Stay

10.     Movant submits that cause exists to grant relief under 11 U.S.C. 362 §(d)(1).   11 U.S.C. 362 §(d)(1) provides that a party may seek relief from stay based upon "cause", including lack of adequate protection.   Adequate protection can be offered in the form of cash or periodic payments or the existence of a sufficient equity cushion.

11.     Movant submits that adequate protection in this case requires normal and periodic cash payments to Movant, as called for by the Note.  The Debtors have failed to tender no less than three (3) post-petition payments to Movant.  A continuing failure to maintain required post-petition regular monthly mortgage payments has been held, in and of itself, to constitute sufficient cause for granting a motion to modify the stay. (In re Trident Corp., 19 BR 956,958 (Bankr. E.D. Pa. 1982), aff'd 22 BR 491 (Bankr. E.D. Pa. 1982 (citing In re Hinkle, 14 BR 202, 204 (Bankr. E.D. Pa. 1981); *see also* In re Jones, 189 BR 13, 15 (Bank. E.D. Okla 1995) (citing Hinkle, 14 BR at 204)).   The Debtors are post-petition due for the June 01, 2020 payment and all subsequent payments. The Debtors' failure to tender regular ongoing monthly mortgage payments is sufficient cause to terminate the automatic stay.

12.     Moreover, Debtors' confirmed Chapter 13 Plan provides that Debtors shall tender post-petition monthly mortgage payments to Movant directly.  Debtor has failed to tender post-petition monthly mortgage payments to Movant.  The failure to comply with the terms of a confirmed Chapter 13 Plan constitutes cause for relief from the automatic stay.

13.     Movant does not have, and has not been offered, adequate protection for its interest in the Property and the passage of time will result in irreparable injury to Movant's interest in the Property including, but not limited to, loss of interest and opportunity.

**WHEREFORE, PREMISES CONSIDERED,** Movant, prays for:

1. An Order from this Court, pursuant to 11 U.S.C. § 362(d), terminating the automatic stay as to Movant, so that Movant may exercise or cause to be exercised any and all rights under its Note and/or Deed of Trust and any and all rights after the foreclosure sale, including, but not limited to, the right to commence foreclosure proceedings on the property and the right to proceed in unlawful detainer;

2. For reasonable attorneys' fees as a secured claim under 11 U.S.C. § 506(b);

3. For the waiver of the 14 day stay pursuant to 11 U.S.C. § 4001(a)(3);

4. For costs incurred or expended in suit herein; and

5. For such other and further relief as the Court deems just and proper.

Dated: September 16, 2020

Respectfully submitted,

/s/ Chase Berger
Chase Berger, Esq. (24115617)
GHIDOTTI | BERGER
600 E. John Carpenter Fwy., Suite 175
Irving, TX 75062
Tel: (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com
**COUNSEL FOR MOVANT**

Angie M. Marth, Esq. (24046353)
GHIDOTTI | BERGER
600 E. John Carpenter Fwy., Suite 175
Irving, TX 75062
Tel: (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

**Attorney for Movant,**
U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust, its successors, its
successors and assigns

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 18-40413 |
| | § | |
| **Ricky M. Farris, Lillian Farris,** | § | |
| | § | |
| **DEBTORS,** | § | CHAPTER 13 |
| | § | |
| | § | |
| | § | |
| **U.S. Bank Trust National Association, as** | § | |
| **Trustee of the Igloo Series III Trust,** | § | |
| | § | |

**MOVANT,**                                                     §
                                                               §
                                                               §
                                                               §
**Ricky M. Farris, Lillian Farris, and**                        §
**Carey D. Ebert, Trustee,**                                    §
                                                               §
                                                               §
**RESPONDENTS.**                                                §
                                                               §

## SUMMARY OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Note |
| B | Deed of Trust and Assignments |
| C | Post-petition Payment History |
| D | Order Granting Motion for Relief from Automatic Stay |

Chase Berger, Esq. (24115617)
GHIDOTTI BERGER, LLP
600 E. John Carpenter Fwy., Ste. 175
Irving, TX 75062
Ph:  (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

**Attorney for Movant,**
U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust, its successors and
assigns

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 18-40413 |
| | § | |
| **Ricky M. Farris, Lillian Farris,** | § | |
| **DEBTORS,** | § | |
| | § | CHAPTER 13 |
| | § | |
| **U.S. Bank Trust National Association, as** | § | |
| **Trustee of the Igloo Series III Trust,** | § | |
| **MOVANT,** | § | |
| | § | |
| **Ricky M. Farris, Lillian Farris, and** | § | |
| **Carey D. Ebert, Trustee,** | § | |
| | § | |
| **RESPONDENTS.** | § | |
| | § | |

**AFFIDAVIT IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

I ___Raymond Valderrama_____ being duly sworn, deposes and says:

1.  I am employed by BSI Financial Services ("Servicer") and am authorized to sign this
affidavit on behalf of Servicer, who services the Subject Loan at issue herein (as defined below)
on behalf of the Movant, U.S. Bank Trust National Association, as Trustee of the Igloo Series III
Trust ("Movant").

2.  In the regular performance of my job functions, I am familiar with and have access to the
business records maintained by Servicer for the purpose of servicing mortgage loans on behalf of

Movant. These records, which include date compilations, electronically imaged documents, and others, are made at or near the time of date by, or from information provided by persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Servicer. It is the regular practice of Servicer's mortgage servicing business to make and/or maintain these records including the records of prior servicers of the loans now serviced by Servicer, including the Subject Loan at issue in this action. Servicer relies upon the accuracy of those records in conducting its business of servicing loans, including the Subject Loan at issue in this action.

3. I regularly verify Servicer records, loan histories, correspondence, and communication histories. This entails reviewing, becoming familiar with, and participating in the review of documents related to loan accounts for loans serviced by Servicer. From my employment for Servicer, I am familiar with its business operations and with the services that Servicer offers to its customers.

4. I have personally reviewed Servicer records as they related to the Subject Loan obligation referred to herein, and as to the following facts, I know them to be true of own knowledge or I have gained knowledge of them from my review of Servicer business records. If called upon to testify, I could and would competently testify to the following under oath.

5. On May 27, 2004, Lillian Farris executed and delivered to Bank of America, N.A., a Note, with an original principal balance of $135,800.00 (the "**Note**"). A true and correct copy of the Note is attached as **Exhibit "A"** to the Declaration and is incorporated herein by reference for all purposes.

6. Movant is the current owner of the Note and is in possession of the original Note.

7. Concurrently therewith, and as security for the Note, Lillian Farris and Ricky M. Farris (collectively hereinafter the "**Borrowers**" or **"Debtors"**), Borrowers executed and delivered to Bank of America, N.A., a Deed of Trust ("**Deed of Trust**"), dated May 27, 2004, and filed of record with the County Clerk of Denton County, Texas against the Property commonly described as 1625 Crown Point Drive, Little Elm Texas 75034 , and more specifically described as:

BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO
THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO
THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS
OF DENTON COUNTY, TEXAS.

A true and correct copy of the Deed of Trust, and all necessary assignments are attached

as **Exhibit "B"** to the Declaration and is incorporated herein by reference for all purposes.

The Borrowers are the owners of record for the Property.

8. On or about March 01, 2018, the Debtors filed a petition for order of relief under

Chapter 13 of the Bankruptcy Code, 11 U.S.C.

9. Debtors have failed to maintain current the post-petition payments due under the Note.

As of the filing of the Motion for Relief, the Debtors were in default for failing to tender no less

than three (3) post-petition monthly payments as follows:

| Payments Due: | Payment | | Total Default |
|---|---|---|---|
| 08/01/2020-09/01/2020 | 2 @ $1,785.40 | = | $3,570.80 |
| Attorney Fees & Costs | | = | $1,231.00 |
| Suspense Balance | | = | $(905.79) |
| **TOTAL** | | = | **$3,896.01** |

10. An additional payment will come due on October 1, 2020, in the amount of $1,785.40.

A true and correct copy of a payment history is attached as **Exhibit "C"** to the Affidavit and is

incorporated herein by reference for all purposes.

11. The outstanding principal indebtedness owed to Movant is $109,731.97, plus accrued

interest, late charges, attorney fees and costs as provided for in the Note and Deed of Trust.

12. The Debtors have failed to provide Movant adequate protection due to material default.

///

///

///

///

///

///

I solemnly affirm under penalty of perjury and upon personal knowledge that the contents of the foregoing affidavit are true.  EXECUTED on, ___09/16/2020___.

Further Affiant sayeth not.

_____
Raymond Valderrama   (name)
Assistant Vice President   (title)
BSI Financial Services, as servicer for Movant

State of _____ )
County of _____ )

Sworn/affirmed to and subscribed before me on this ___ day of _____, 2020.
Personally known [ ] or produced identification [ ].
Type of identification produced _____.

_____
(Signature of Notary Public)
My commission expires _____
Notary seal

SEE ATTACHED

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange

Subscribed and sworn to (or affirmed) before me on this _1/6_ day of _September_, 20 _20_ , by Raymond Valderrama _____,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

BRITTANY BRENES
Notary Public - California
Orange County
Commission # 2169041
My Comm. Expires Oct 22, 2020

(Seal)                          Signature _____

# EXHIBIT "A"

LOAN NUMBER:

# NOTE

| 05/27/04 | LITTLE ELM | TX |
|---|---|---|
| [Date] | [City] | [State] |

1625 CROWN POINT DRIVE, LITTLE ELM, TX 75034

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     135,800.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.125     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1ST   day of each month beginning on JULY 01, 2004   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JUNE 01, 2034   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404   or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $     825.14     .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

LF

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0                    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)

BS5R 05/27/04 8:27 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Lillian Farris_ _____ (Seal)
LILLIAN FARRIS                                                                   -Borrower

PAY TO THE ORDER OF

_____    _____ (Seal)
WITHOUT RECOURSE                                                      -Borrower
Bank of America, N.A.

BY _____    _____ (Seal)
WILLIAM L. CRAIG                                                        -Borrower
ASSISTANT VICE PRESIDENT

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

*(Sign Original Only)*

# EXHIBIT "B"



**Denton County**
**Cynthia Mitchell**
**County Clerk**
**Denton, TX 76202**

---

**Instrument Number: 2004-79989**

**Recorded On: June 18, 2004**

As
**Deed of Trust**

**Parties:** FARRIS LILLIAN

**To**

**Billable Pages: 21**

**Number of Pages: 21**

**Comment:**

---

** ** Examined and Charged as Follows: ** **

Deed of Trust                54.00

**Total Recording:**         54.00



---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**
Document Number: 2004-79989

Receipt Number: 118396

Recorded Date/Time: June 18, 2004 10:57A

User / Station: E McCorkle - Cash Station 2

**Record and Return To:**

BANK OF AMERICA
9000 SOUTHSIDE BLVD BLDG 700
JACKSONVILLE FL 32256

---

THE STATE OF TEXAS }
COUNTY OF DENTON }
I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

*Cynthia Mitchell*

County Clerk
Denton County, Texas

Return To: LOAN #███████████
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256
Prepared By:
GLORIA E CHAPLIN
BANK OF AMERICA, N.A.
9000 SOUTHSIDE BLVD
JACKSONVILLE, FL  322560000

**REPUBLIC TITLE**

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST
LOAN # ████████

## NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     MAY 27, 2004              ,
together with all Riders to this document.
(B) "Borrower" is
LILLIAN FARRIS AND RICKY M FARRIS, HUSBAND AND WIFE

Borrower is the grantor under this Security Instrument.
(C) "Lender" is    BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**              Form 3044 1/01

●●®–6(TX) (0311)

Page 1 of 17                           Initials: _____
     VMP Mortgage Solutions (800)521-7291
                                CVTX 05/27/04 8:27 AM



Lender's address is    9000 SOUTHSIDE BLVD, JACKSONVILLE, FL 322560000

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is PRLAP, INC.

Trustee's address is 1400 BEST PLAZA DRIVE, PO BOX 26865, RICHMOND, VA 23227

(E) "Note" means the promissory note signed by Borrower and dated  MAY 27, 2004
The Note states that Borrower owes Lender ONE HUNDRED THIRTY FIVE THOUSAND EIGHT
HUNDRED AND 00/100                                                     Dollars
(U.S. $     135,800.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than      JUNE 01, 2034
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended

Initials: _LF. RM_

from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the      COUNTY                          of DENTON                          :

        [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

**BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.**

Parcel ID Number: TBD                      which currently has the address of
1625 CROWN POINT DRIVE                               [Street]
LITTLE ELM                           ,    [City], Texas 75034    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: LF  _____

VMP®-6(TX) (0311)                Page 3 of 17                       **Form 3044 1/01**
        CVTX 05/27/04 8:27 AM

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: 

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

Initials: 

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.



8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and



Initials: LF RM

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

Initials: LF RF

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

Initials: LF _KwF_

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials: LF RnF

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited

Initials: LF KsC

-6(TX) (0311)                    Page 13 of 17                    Form 3044 1/01

CVTX 05/27/04 8:27 AM

to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

Initials: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Lillian Farris*                    (Seal)
                                          LILLIAN FARRIS                      -Borrower


_____          _____     (Seal)
                                                                             -Borrower


_____ (Seal)   _____     (Seal)
                        -Borrower                                            -Borrower


_____ (Seal)   *Ricky M Farris*                    (Seal)
                        -Borrower         RICKY M FARRIS                      -Borrower


_____ (Seal)   _____     (Seal)
                        -Borrower                                            -Borrower

STATE OF TEXAS
County of Dallas
    Before me the undersigned on this day
personally appeared

Lillian Farris and Ricky M Farris

known to me (or proved to me on the oath of
or through Texas Drivers License ) to be the person whose name is subscribed
to the foregoing instrument and acknowledged to me that he/she/they executed the same for the
purposes and consideration therein expressed.
    Given under my hand and seal of office this 27 day of May 2004.
(Seal)

My Commission Expires:
                                                    Notary Public

TAMMY JAGGEARS
Notary Public, State of Texas
My Commission Expires 07-10-05

VMP®—6(TX) (0311)                    Page 17 of 17

Initials: LF RmF

Form 3044 1/01

CVTX 05/27/04 8:27 AM

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

DocID#

| Recording Requested By: | When recorded mail to: |
| --- | --- |
| Bank of America | Fay Servicing, LLC C/O: |
| Prepared By: | Robert (Tres) Mackey |
| Diana De Avila | Ref: Trailing Documents - |
| 800-444-4302 | USROF/NB |
| 1800 Tapo Canyon Road | 939 W. North Avenue Suite |
| Simi Valley, CA 93063 | 680 |
| | Chicago, IL 60642 |

Property Address:
**1625 Crown Point Drive**
**Frisco, TX 75034-8771**
TX0v2-ADT           3/12/2014  FAY0135

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III.** whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ATTENTION: STRUCTURED FINANCE SERVICES – PROF** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
| --- | --- |
| Beneficiary: | **BANK OF AMERICA, N.A.** |
| Borrower(s): | **LILLIAN FARRIS AND RICKY M FARRIS, HUSBAND AND WIFE** |
| Original Trustee: | **PRLAP, INC.** |
| Date of Deed of Trust: | **5/27/2004** |
| Original Loan Amount: | **$135,800.00** |

Recorded in **Denton County, TX** on: **6/18/2004**, book N/A, page N/A and instrument number **2004-79989**

Property Legal
Description:
**BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**MAR 18 2014**

**BANK OF AMERICA, N.A.**

By:
Christopher Herrera
Assistant Vice President

**Assignment of Deed of Trust**

PREPARED BY AND RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092                                                          Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST
III , 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignor) by these presents does assign, and set over, without recourse, to
USROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE , 60 Livingston
Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due
thereon, executed by LILLIAN FARRIS AND RICKY M FARRIS, HUSBAND AND WIFE to BANK OF AMERICA, N.A.. Trustee: PRLAP,
INC. Said deed of trust Dated: 5/27/2004 is recorded in the State of TX, County of Denton on 6/18/2004, as Document # 2004-79989
AMOUNT: $ 135,800.00  SEE ATTACHED EXHIBIT A
   Property Address: 1625 CROWN POINT DRIVE, LITTLE ELM, TX 75034
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: July 29, 2015
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III

By:
_____
     Michael E. Wileman, Authorized Signator
State of Texas, County of Tarrant
On 07/29/2015, before me, the undersigned, personally appeared Michael E. Wileman, who acknowledged that he/she is Authorized Signator
of/for  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III  and that he/she executed the
foregoing instrument and that such execution was done as the free act and deed of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR PROF-2013-S3 REMIC TRUST III .  GIVEN UNDER MY HAND AND SEAL OF OFFICE this 07/29/2015.

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2018

Notary public, C. Lafferty
My Commission Expires: November 30, 2018

TX  Denton

**EXHIBIT "A"**

**BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.**

Denton County
Juli Luke
County Clerk

**Instrument Number:** 107461

ERecordings-RP

DEED OF TRUST

Recorded On: August 30, 2017 03:20 PM                    Number of Pages: 4

---

**" Examined and Charged as Follows: "**

Total Recording: $38.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                        **Record and Return To:**

Document Number:    107461                                  eRx
Receipt Number:     20170830000556
Recorded Date/Time: August 30, 2017 03:20 PM
User:               TJ D
Station:            D1ZP5182

---



**STATE OF TEXAS**
**COUNTY OF DENTON**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

Juli Luke
County Clerk
Denton County, TX

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ▮▮▮▮▮▮
Svcr Ln No: ▮▮▮▮

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE**, whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **5/27/2004**
Original Loan Amount: **$135,800.00**
Executed by (Borrower(s)): **LILLIAN FARRIS & RICKY M. FARRIS**
Original Trustee: **PRLAP, INC.**
Original Beneficiary: **BANK OF AMERICA, N.A.**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: **2004-79989** in the Recording District of **DENTON, TX**, Recorded on **6/18/2004**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1625 CROWN POINT DIRVE, LITTLE ELM, TEXAS 75034**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: August 4, 2017

**U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, BY PRESTON RIDGE PARTNERS III, LLC, ITS ATTORNEY-IN-FACT**

By: SCOTT GILBERT
Title: MANAGER

Witness Name: _Tyler Moser_

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _Arizona_
County of _Maricopa_

On _August 4, 2017_, before me _Alexandria Davies_, a Notary Public, personally appeared **SCOTT GILBERT, MANAGER of/for PRESTON RIDGE PARTNERS III, LLC, AS ATTORNEY-IN-FACT FOR U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of _Arizona_ that the foregoing paragraph is true and correct.  I further certify SCOTT GILBERT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _Alexandria Davies_
My commission expires: _October 15, 2020_

ALEXANDRIA JEAN DAVIES
Notary Public - Arizona
Maricopa County
My Comm. Expires Oct 15, 2020

**EXHIBIT "A"**

BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF
LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET
V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.

# EXHIBIT "C"



**Payment Changes**

| Date | P&I | Escrow | Total | Notice Filed |
|---|---|---|---|---|
| 4/1/2018 | $825.14 | $623.71 | $1,448.85 | POC |
| 12/1/2019 | $825.14 | $957.47 | $1,782.61 | 11/7/2019 |
| 2/1/2020 | $825.14 | $960.26 | $1,785.40 | 1/8/2020 |

**Loan Information**

| | |
|---|---|
| Loan # | |
| Borrower | Lillian Farris |
| BK Case # | 18-40413 |
| Date Filed | 3/1/2018 |
| First Post Petition | |
| Due Date | 4/1/2018 |
| POC Covers | No POC |

BSI Did Not file a POC. DC filed POC for Mtg Arrears iao $7134.00

| Date | Amount Rcvd | Late Charges Incurred | Post Pet Due Date | Contractual Due Date | Amt Due | Over/Short | Suspense Credit | Suspense Debit | Suspense Balance | POC Arrears Credit | POC Debit | POC Suspense Balance | POC Paid to Date | APO Credit | APO Debit | APO Suspense Balance | APO Paid to Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/18/2018 | $1,448.85 | | 4/1/2018 | 11/1/2016 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 5/30/2018 | $1,448.85 | | 5/1/2018 | 12/1/2016 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 6/29/2018 | $1,448.85 | | 6/1/2018 | 1/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 8/9/2018 | $1,448.85 | | 7/1/2018 | 2/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 8/31/2018 | $1,448.85 | | 8/1/2018 | 3/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 10/2/2018 | $1,448.85 | | 9/1/2018 | 4/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 10/30/2018 | $1,448.85 | | 10/1/2018 | 5/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 11/29/2018 | $1,448.85 | | 11/1/2018 | 6/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 12/26/2018 | $1,448.85 | | 12/1/2018 | | $1,448.85 | $0.00 | | | $0.00 | | | $0.00 | $0.00 | | | $0.00 | $0.00 | |
| 12/31/2018 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $173.71 | | $173.71 | $173.71 | | | $0.00 | $0.00 | |
| 1/28/2019 | $1,448.85 | | 1/1/2019 | 7/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $173.71 | $173.71 | | | $0.00 | $0.00 | |
| 1/30/2019 | | Pre-Pet Disb | | 8/1/2017 | | $0.00 | | | $0.00 | $410.65 | | $584.36 | $584.36 | | | $0.00 | $0.00 | |
| 3/6/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $347.67 | | $932.03 | $932.03 | | | $0.00 | $0.00 | |
| 3/6/2019 | $1,448.85 | | 2/1/2019 | 9/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $932.03 | $932.03 | | | $0.00 | $0.00 | |
| 3/28/2019 | | Pre-Pet Disb | | 10/1/2017 | | $0.00 | | | $0.00 | $370.56 | | $1,302.59 | $1,302.59 | | | $0.00 | $0.00 | |
| 4/9/2019 | $1,448.85 | | 3/1/2019 | 11/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $1,302.59 | $1,302.59 | | | $0.00 | $0.00 | |
| 5/2/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $395.14 | | $1,697.73 | $1,697.73 | | | $0.00 | $0.00 | |
| 5/3/2019 | $1,448.85 | | 4/1/2019 | 12/1/2017 | $1,448.85 | $0.00 | | | $0.00 | | | $1,697.73 | $1,697.73 | | | $0.00 | $0.00 | |
| 5/31/2019 | $1,448.85 | | 5/1/2019 | 1/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | $1,697.73 | $1,697.73 | | | $0.00 | $0.00 | |
| 6/7/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $422.21 | | $2,119.94 | $2,119.94 | | | $0.00 | $0.00 | |
| 6/28/2019 | $1,448.85 | | 6/1/2019 | 2/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | $2,119.94 | $2,119.94 | | | $0.00 | $0.00 | |
| 7/3/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $457.79 | | $2,577.73 | $2,577.73 | | | $0.00 | $0.00 | |
| 7/3/2019 | | Pre-Pet Applied | | 3/1/2018 | | $0.00 | | | $0.00 | | $1,448.85 | $1,128.88 | $2,577.73 | | | $0.00 | $0.00 | |
| 7/31/2019 | $1,448.85 | | 7/1/2019 | | $1,448.85 | $0.00 | | | $0.00 | | | $1,128.88 | $2,577.73 | | | $0.00 | $0.00 | |
| 7/31/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $513.10 | | $1,641.98 | $3,090.83 | | | $0.00 | $0.00 | |
| 8/30/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $513.10 | | $2,155.08 | $3,603.93 | | | $0.00 | $0.00 | |
| 8/30/2019 | | Pre-Pet Applied | | 4/1/2018 | | $0.00 | | | $0.00 | | $1,448.85 | $706.23 | $3,603.93 | | | $0.00 | $0.00 | |
| 9/6/2019 | $1,448.85 | | 8/1/2019 | 5/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | $706.23 | $3,603.93 | | | $0.00 | $0.00 | |
| 10/9/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $513.10 | | $1,219.33 | $4,117.03 | | | $0.00 | $0.00 | |
| 10/9/2019 | $1,448.85 | | 9/1/2019 | 6/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | $1,219.33 | $4,117.03 | | | $0.00 | $0.00 | |
| 10/9/2019 | | Pre-Pet Applied | | 7/1/2018 | | $0.00 | | | $0.00 | | $1,448.85 | -$229.52 | $4,117.03 | | | $0.00 | $0.00 | |
| 10/31/2019 | $1,448.85 | | 10/1/2019 | 8/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | -$229.52 | $4,117.03 | | | $0.00 | $0.00 | |
| 11/5/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $489.87 | | $260.35 | $4,606.90 | | | $0.00 | $0.00 | |
| 11/26/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $489.87 | | $750.22 | $5,096.77 | | | $0.00 | $0.00 | |
| 11/29/2019 | $1,448.85 | | 11/1/2019 | 9/1/2018 | $1,448.85 | $0.00 | | | $0.00 | | | $750.22 | $5,096.77 | | | $0.00 | $0.00 | |
| 11/29/2019 | | Pre-Pet Applied | | 10/1/2018 | | $0.00 | | | $0.00 | | $489.87 | $750.22 | $5,096.77 | | | $0.00 | $0.00 | |
| 12/26/2019 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $489.87 | | $1,240.09 | $5,586.64 | | | $0.00 | $0.00 | |
| 1/2/2020 | $1,782.61 | | 12/1/2019 | 11/1/2018 | $1,782.61 | $0.00 | | | $0.00 | | | $1,240.09 | $5,586.64 | | | $0.00 | $0.00 | |
| 1/28/2020 | | Pre-Pet Disb | | | | $0.00 | | | $0.00 | $489.87 | | $1,729.96 | $6,076.51 | | | $0.00 | $0.00 | |
| 2/3/2020 | $1,785.40 | | 1/1/2020 | 12/1/2018 | $1,782.61 | $2.79 | $2.79 | | $2.79 | | | $1,729.96 | $6,076.51 | | | $0.00 | $0.00 | |
| 2/3/2020 | | Pre-Pet Applied | | 1/1/2019 | | $0.00 | | | $2.79 | | $1,364.29 | $365.67 | $6,076.51 | | | $0.00 | $0.00 | |
| 3/6/2020 | | Pre-Pet Disb | | | | $0.00 | | | $2.79 | $489.87 | | $855.54 | $6,566.38 | | | $0.00 | $0.00 | |
| 3/6/2020 | $1,785.40 | | 2/1/2020 | 2/1/2019 | $1,785.40 | $0.00 | | | $2.79 | $670.31 | | $1,525.85 | $7,236.69 | | | $0.00 | $0.00 | |
| 3/9/2020 | | Pre-Pet Disb | | | | $0.00 | | | $2.79 | $491.99 | | $2,017.84 | $7,728.68 | | | $0.00 | $0.00 | |
| 3/31/2020 | | Pre-Pet Disb | | | | $0.00 | | | $2.79 | | | $2,017.84 | $7,728.68 | | | $0.00 | $0.00 | |
| 4/3/2020 | $1,091.00 | | | | | $1,091.00 | $1,091.00 | | $1,093.79 | | | $2,017.84 | $7,728.68 | | | $0.00 | $0.00 | |
| 4/13/2020 | $695.00 | | 3/1/2020 | 3/1/2019 | $1,785.40 | -$1,090.40 | | $1,090.40 | $3.39 | | | $2,017.84 | $7,728.68 | | | $0.00 | $0.00 | |
| 5/1/2020 | $1,300.00 | | | | | $1,300.00 | $1,300.00 | | $1,303.39 | | | $2,017.84 | $7,728.68 | | | $0.00 | $0.00 | |
| 5/5/2020 | | Pre-Pet Disb | | | | $0.00 | | | $1,303.39 | $75.63 | | $2,093.47 | $7,804.31 | | | $0.00 | $0.00 | |
| 5/12/2020 | $486.00 | | 4/1/2020 | 4/1/2019 | $1,785.40 | -$1,299.40 | | $1,299.40 | $3.99 | | | $2,093.47 | $7,804.31 | | | $0.00 | $0.00 | |
| 6/2/2020 | $1,100.00 | | | | | $1,100.00 | $1,100.00 | | $1,103.99 | | | $2,093.47 | $7,804.31 | | | $0.00 | $0.00 | |
| 6/11/2020 | $686.00 | | 5/1/2020 | 5/1/2019 | $1,785.40 | -$1,099.40 | | $1,099.40 | $4.59 | | | $2,093.47 | $7,804.31 | | | $0.00 | $0.00 | |
| 7/2/2020 | $686.00 | | | | | $686.00 | $686.00 | | $690.59 | | | $2,093.47 | $7,804.31 | | | $0.00 | $0.00 | |
| 7/2/2020 | | Pre-Pet Disb | | 6/1/2019 | | $0.00 | | | $690.59 | | $1,364.29 | $729.18 | $7,804.31 | | | $0.00 | $0.00 | |
| 7/2/2020 | | Pre-Pet Applied | | 7/1/2019 | | $0.00 | | | $690.59 | | $1,364.29 | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| 8/4/2020 | $1,100.00 | | 6/1/2020 | 8/1/2019 | $1,785.40 | -$685.40 | | $685.40 | $5.19 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| 8/4/2020 | $1,000.00 | | | | | $1,000.00 | $1,000.00 | | $1,005.19 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| 8/25/2020 | $786.00 | | 7/1/2020 | 9/1/2019 | $1,785.40 | -$999.40 | | $999.40 | $5.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| 9/4/2020 | $900.00 | | | | | $900.00 | $900.00 | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |
| | | | | | | $0.00 | | | $905.79 | | | -$635.11 | $7,804.31 | | | $0.00 | $0.00 | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |
| | | | | | $0.00 | | $905.79 | | | -$635.11 | $7,804.31 | | $0.00 | $0.00 |

# EXHIBIT "D"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.: 18-40413 |
| | § | |
| **Ricky M. Farris, Lillian Farris,** | § | |
| | § | |
| **DEBTORS,** | § | CHAPTER 13 |
| | § | |
| **U.S. Bank Trust National Association, as** | § | |
| **Trustee of the Igloo Series III Trust,** | § | |
| | § | |
| **MOVANT,** | § | |
| | § | |
| **Ricky M. Farris, Lillian Farris, and** | § | |
| **Carey D. Ebert, Trustee,** | § | |
| | § | |
| **RESPONDENTS.** | § | |
| | § | |

## ORDER GRANTING RELIEF FROM AUTOMATIC STAY

On this day came on for consideration the Motion for Relief from Automatic Stay filed by U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust ("**Movant**"). The Court finds that the Motion was properly served pursuant to the Federal Rules and Local Rules of Bankruptcy Procedure and that it contained the appropriate fourteen (14) day negative notice language, pursuant to LBR 4001 and 9013, and that Respondents – Debtors, although timely and properly served as required by Local Bankruptcy Rules, failed to appear, file an affidavit, answer or request a hearing.

The Court further finds that no objection or written response to the Motion has been timely filed by any party. Due to the failure of any party to file a timely written response, the allegations contained in the Motion stand unopposed and, therefore, the Court finds that good cause exists for the entry of the following order.

**IT IS THEREFORE ORDERED** that the automatic stay of 11 U.S.C. *Section* 362 of the Bankruptcy Code is hereby terminated with respect to the property commonly known as **1625 CROWN POINT DRIVE, LITTLE ELM, TEXAS 75034**, for purpose of permitting Movant, its successors and assigns, to proceed with foreclosure proceedings on such property, including possession thereof, or accepting a deed in lieu or consummating a short sale. The Property is more specifically described as:

> BEING LOT 7, BLOCK G, KINGS CROSSING PHASE 2, AN ADDITION TO THE CITY OF LITTLE ELM, DENTON COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN CABINET V, PAGE 546, OF THE PLAT RECORDS OF DENTON COUNTY, TEXAS.

**IT IS FURTHER ORDERED** that Movant, its successors in interest and/or assigns, is authorized to pursue its statutory and contractual rights and remedies, including to foreclose on and repossess the Property, pursuant to applicable non-bankruptcy law, accept a Deed in Lieu or consummate a Short Sale;

**IT IS FURTHER ORDERED** that, in the event Debtor's bankruptcy is dismissed and reinstated, or in the event Debtors' Bankruptcy converts to a different bankruptcy Chapter, this Order shall be considered a part of any such bankruptcy;

**IT IS FURTHER ORDERED** that upon termination of the stay Movant, its successors in interest and/or assigns shall not be required to file any subsequent Notices of Mortgage Payment Change, or Notices of Fees, Expenses of Charges, as to the Property;

**IT IS FURTHER ORDERED** that the requirement of Bankruptcy Rule 4001(a)(3) is hereby waived, making this order effective as of the date this order is signed and entered by the Court;

Movant's Attorney's signature on this agreed order constitutes a representation to the Court that Movant has complied with Local Rules 1 & 4001.

### END ORDER ###

Respectfully submitted,

/s/ Chase Berger
Chase Berger, Esq. (24115617)
GHIDOTTI BERGER, LLP
600 E. John Carpenter Fwy., Ste. 175
Irving, TX 75062
Ph: (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com
**COUNSEL FOR MOVANT**

Chase Berger, Esq. (24115617)
GHIDOTTI | BERGER
600 E. John Carpenter Fwy., Suite 175
Irving, TX 75062
Tel: (972) 893-3096
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

**Attorney for Movant,**
U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust, its successors
and/or assignees

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | CASE NO.:  18-40413 |
| | § | |
| **Ricky M. Farris, Lillian Farris,** | § | CHAPTER 3 |
|     **DEBTORS,** | § | |
| | § | **CERTIFICATE OF SERVICE** |
| **U.S. Bank Trust National Association, as** | § | |
| **Trustee of the Igloo Series III Trust,** | § | |
|     **MOVANT,** | § | |
| | § | |
| **Ricky M. Farris, Lillian Farris, and** | § | |
| **Carey D. Ebert, Trustee,** | § | |
| | § | |
|     **RESPONDENTS.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**<u>CERTIFICATE OF SERVICE</u>**

    I am employed in the County of Orange, State of California.  I am over the age of

eighteen and not a party to the within action.  My business address is: 1920 Old Tustin Ave.,

Santa Ana, CA 92705.

1

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

On September 16, 2020 I served the following documents described as:

- **MOTION AND NOTICE OF MOTION FOR RELIEF FROM THE AUTOTMATIC STAY**
- **DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
- **EXHIBITS IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
- **PROPOSED ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

on the interested parties in this action by  placing a true and correct copy thereof in a sealed envelope addressed as follows:

(Via United States Mail)

| **Debtors** | **Debtors' Counsel** |
|---|---|
| **Ricky M. Farris**<br>1625 Crown Point Dr.<br>Frisco, TX 75034 | **Diane S. Barron**<br>Barron and Carter, LLP<br>660 N. Central Expy, Ste 101<br>Plano, TX 75074 |
| **Lillian Farris**<br>1625 Crown Point Dr.<br>Frisco, TX 75034 | **Chapter 13 Trustee**<br>**Carey D. Ebert**<br>P. O. Box 941166<br>Plano, TX 75094-1166 |
| **US Trustee**<br>**Office of the U.S. Trustee**<br>110 N. College Ave.<br>Suite 300<br>Tyler, TX 75702 | |

  xx    (By First  Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service  by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

CERTIFICATE OF SERVICE

   <u>  xx  </u>(Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on September 16, 2020 at Santa Ana, California

<u>/s / Brandy Carroll</u>
Brandy Carroll

CERTIFICATE OF SERVICE